UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

GREGORY HARDY,

    Plaintiff,

v.

BILL JOHNSTON, et al.,

    Defendants.

Hon. Janet T. Neff

Case No. 1:20-cv-649

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff filed his complaint in this case on July 16, 2020, against several individuals employed by RPM Auto Sales in Lansing, Michigan, alleging claims based on his May 19, 2020 purchase of a used vehicle. Plaintiff filed an amended and supplemental complaint on July 31, 2020, "to include 28 U.S.C. 1331, 28 U.S.C. 1332 and 28 U.S.C. 1367 against Defendants." (ECF No. 8 at PageID.64.) Having granted Plaintiff's motion to proceed as a pauper, the Court has conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, or fails to state a claim upon which relief can be granted. Having conducted this initial review, I recommend that Plaintiff's federal-law claims, other than his potential claim under the Magnuson-Moss Warranty Act (MMWA), be dismissed with prejudice, that the MMWA claim be dismissed without prejudice to allow Plaintiff to bring it in state court, and that his state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to

raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

When evaluating a complaint under Rule 12(b)(6), a court may consider the complaint and any exhibits attached thereto, public records, and items appearing in the record of the case. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Continental Identification Prods., Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich. Jan. 2, 2008) (stating that "an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . . in determining whether the complaint fail[s] to state a claim upon which relief may be

granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 F. App'x 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

### III.  Discussion

#### A.  Facts

On May 19, 2020, Plaintiff purchased a used 2011 Chevrolet Impala from RPM Auto Sales for $5,995.00.  Plaintiff received a $400 trade-in credit for his 2004 Chrysler Sebring, although he alleges that Defendants initially promised him a $1,200 trade-in credit. (ECF No. 8 at PageID.65.) Plaintiff alleges that, when he arrived at the office, Defendant Todd Camp used an aggressive approach and deception to entice Plaintiff to enter into the transaction.  Plaintiff claims that Defendant Camp accessed his debit card without consent or permission for the $800 down payment. (*Id.* at PageID.66; ECF No. 1-3 at PageID.18; ECF No. 1-16 at PageID.44.) The Impala came with a 30-day limited warranty, covering 50% of labor and parts for the vehicle's motor, transmission, and rear end. (ECF No. 1-14 at PageID.40.)

Although Plaintiff test drove the Impala, by the time he arrived home, all of the lights on the dashboard were on.  Plaintiff called Camp and informed him that he no longer wanted the vehicle and wanted it replaced because the lights on the dashboard had been manipulated and Plaintiff believed the vehicle was dangerous to drive.  Defendant Camp became "belligerent" and told Plaintiff that they did him a favor by taking his "'broke down' ass car" on trade, and that if Plaintiff did not return within fifteen minutes to retrieve his Sebring they would tow it off the lot. When Plaintiff reached the lot, the Sebring was gone.  Defendant Camp refused to come outside to speak with Plaintiff and told Plaintiff that Plaintiff now owned the Impala.

Plaintiff returned to RPM the next day and spoke with Defendant Bill Johnston, who said that Plaintiff was "lying" about the alleged trade-in offer of $1,200 but assured Plaintiff they would

3

fix any problem with the vehicle. Thereafter, Plaintiff returned to RPM 19 times within the first 14 days of the warranty period. (ECF No. 8 at PageID.68–69.) Plaintiff alleges that, while he was forced to wait outside during these visits, Defendants would have his vehicle in the garage pretending to fix it. On several other occasions, Defendants told Plaintiff that RPM's mechanics needed to order parts and kept the vehicle in the garage for several hours while they pretended to fix it. Plaintiff alleges that Defendants misled him about the need to order parts and about actually repairing the vehicle.

Plaintiff also alleges that Defendants Jessica Hatch and Joe Cheeney took advantage of him and committed "fraudulent acts" when he made his first two monthly payments of $200 by failing to credit the entire payment to reduce the principal balance.[1] (*Id.* at PageID.67–68; 70–71.) Plaintiff alleges that the principal balance should have been $4,978.70 ($5,378.70 - $400), not $5,141.23. (*Id.* at PageID.71.)

**B.     Analysis**

Plaintiff alleges that Defendants violated the following laws: (1) Michigan's lemon law, Mich. Comp. Laws § 257.1402; (2) Michigan's Motor Vehicle Service and Repair Act, Mich. Comp. Laws § 257.1301 *et seq.*; (3) the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq.*; (4) Federal Trade Commission Rule 16 C.F.R. § 455 (which Plaintiff refers to as "the Used Car Rule"); (5) the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*; (6) Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n; and (5) the ordinances of the City

---

[1] The exhibits Plaintiff attached to his original complaint show that this allegation is inaccurate. The Motor Vehicle Installment Sales Contract shows the total amount financed as $5,378.70 at an annual percentage rate of 24.98%, to be paid in 39 monthly payments of $200 and a final payment of $48.84. (ECF No. 1-4.) Because Plaintiff's monthly payments included interest, they would not have reduced the principal amount of the loan by the entire payment amount. If the payments had been applied as Plaintiff alleges, they would not have accounted for the interest obligation. The payment receipts Plaintiff attaches to his complaint appear to be correct. (ECF No. 1-2 at PageID.14, 16.)

of Lansing, Delta Township, the County of Ingham, and the State of Michigan.  Because Plaintiff does not allege that the parties are diverse and the amount in controversy does not exceed $75,000, exclusive of interest and costs, the question is whether Plaintiff alleges a claim within the Court's federal question jurisdiction, 28 U.S.C. § 1331.

First, Plaintiff does not allege a claim under Section 14 (a) of the Securities Exchange Act of 1934, which establishes liability for material misstatements or omissions in a proxy statement. Plaintiff's claim involves the purchase of a used car, not securities.  Second, Plaintiff alleges no basis for a violation of the Federal Trade Commission Act, and, in any event, there is no private right of action under that Act.  *See Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 987 (6th Cir. 1973).  Third, 16 C.F.R. § 455 could potentially apply in this case, as it requires used vehicle dealers to provide a Buyers Guide to vehicle purchasers, affixed to the window of the vehicle and providing all of the necessary information, including whether the vehicle is sold without a warranty.  16 C.F.R. § 455.1(b); *see also Brown v. Cincyautos, Inc.*, No. 1:08cv372, 2009 WL 88736, at *1–2 (S.D. Ohio Jan. 12, 2009).  Plaintiff attaches to his complaint a copy of the Buyers Guide for the Impala, which clearly states that the vehicle was sold with a 30-day warranty and appears to provide all of the required information.  (ECF Nos. 1-14 and 1-15.)  Plaintiff alleges no fact indicating how Defendants violated this provision.

By contrast, Plaintiff appears to have a plausible breach of contract/warranty claim that could be brought under the MMWA, 15 U.S.C. § 2310.  However, the statute precludes a plaintiff from bringing such claim in federal court if "the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in th[e] suit."  15 U.S.C. § 2310(3)(B); *see also Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 882–83 (6th Cir. 2005).  Here, Plaintiff's claim is well below the jurisdictional threshold for

bringing a MMWA claim in federal court. Nonetheless, because Plaintiff may still bring a MMWA claim in state court, dismissal of this claim without prejudice is appropriate.

As for Plaintiff's state-law claims, I recommend that the Court dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3) because the amended complaint has not even been served, Defendants (apparently) are all Michigan residents, and Plaintiff may refile his claims in state court. *See McGhee v. Lipscomb*, 2:15-cv-02023, 2015 WL 4726992, at *1 (W.D. Tenn. Aug. 10, 2015) (declining to exercise supplemental jurisdiction over the plaintiff's state-law claims after dismissing the federal claims pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim).

## CONCLUSION

For the foregoing reasons, I recommend that, except for Plaintiff's MMWA claim, all of Plaintiff's federal claims be **dismissed with prejudice** for failure to state a claim; that Plaintiff's MMWA claim be **dismissed without prejudice**; and that Plaintiff's state-law claims be **dismissed without prejudice** pursuant to 28 U.S.C. § 1367(c). The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1961), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Plaintiff appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Date:  August 25, 2020                                             /s/ Sally J. Berens
                                 SALLY J. BERENS
                                 U.S. Magistrate Judge

   OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).